* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The appealing parties have shown good ground to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner DeLuca with modifications including the amount of attendant care and rate of pay for said care.
 * * * * * * * * * * * RULING ON A MOTION
Plaintiff filed a Motion to Preclude defendant-carrier from paying defense counsel's attorneys' fees without prior approval from the Industrial Commission for an accounting. Defendants filed a Response and a Motion for Attorneys' Fees under N.C. Gen. Stat. § 97-88.1. *Page 2 
Additionally, plaintiff filed a Motion to Add Additional Evidence which defendants have opposed.
Based upon a careful review of the Motions and Responses, IT IS HEREBY ORDERED that plaintiff's Motions are DENIED. IT IS FURTHER ORDERED that defendants' Motion for Attorneys' Fees is DENIED.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of injury, February 28, 1983, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant, an employment relationship existed between plaintiff and defendant-employer.
3. On or about February 28, 1983, UTICA Mutual Insurance Company was the carrier on the risk.
4. On February 28, 1983, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer.
5. The parties have stipulated that plaintiff's average weekly wage was $467.50.
6. The issue of entitlement to attendant care for the period from the day of the initial injury by accident, February 28, 1983, until February 3, 2003, was compromised and settled by agreement on February 14, 2003. *Page 3 
7. The parties stipulated to medical questionnaires executed by plaintiff's treating physicians, Industrial Commission forms, letters, and other documentation which were admitted into evidence as Stipulated Exhibit 1.
8. At the evidentiary hearing, the parties stipulated into evidence their pre-trial agreement as Stipulated Exhibit 2. Further, a pre-trial conference was conducted on the record and defendants' Exhibit 1 was admitted into evidence over plaintiff's objection.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on or about September 25, 1947 and has been married to Joyce Adcox since 1968. She has lived with him continuously since that time and is his legal guardian.
2. Plaintiff suffered a severe injury to his head in an admittedly compensable injury by accident on or about February 28, 1983.
3. Plaintiff suffered, at least, from the following conditions as a result of the compensable injury: depression, confused and disoriented state, difficulty in ambulation, poor balance, atlaxia or likelihood of falling, cognitive impairment, and frontal lobe syndrome (interferes with decision-making and memory).
4. Plaintiff has been out of work since the date of his compensable injury and has been receiving attendant care services for many years. For the last several years, defendants have authorized this attendant care to be provided by Kelly Home Health Services (hereinafter "Kelly Services"). *Page 4 
5. Through April 28, 2007, attendant care was being authorized by defendants for 60 hours of attendant care per week. Plaintiff contends that Mrs. Adcox provided attendant care services to plaintiff during the additional hours of the week when defendants were not providing services.
6. Kelly Services began providing plaintiff with in-home professional attendant care in 2003, with care mainly being provided during the hours plaintiff would have been at home alone while Mrs. Adcox was working. In February, 2007, Mrs. Adcox accepted a retirement package from her former employer. Since her retirement, Mrs. Adcox is home more frequently and has thus requested defendants pay her to provide her husband with 24-hour attendant care.
7. Prior to her retirement, Mrs. Adcox had not raised any concerns about the quality or continuity of care provided by Kelly Services. However, following her retirement in March, 2007, Mrs. Adcox has called Kelly Services on several occasions and asked that particular aides not be returned to her home for various reasons, such as eating too much while on duty, being on the telephone too much while on duty, and speaking with a foreign accent. Mrs. Adcox testified that when Kelly Services was unable to provide aides with whom she did not have concerns, she provided care to her husband.
8. On February 28, 2007, defendants denied Mrs. Adcox's request to discontinue the attendant care services provided by Kelly Services and instead pay Mrs. Adcox for providing attendant care to plaintiff.
9. Following defendants' denial of the request by Mrs. Adcox, in April 2007 defendants received several forms executed by plaintiff's treating physicians, which indicated that plaintiff required companion or attendant care for 24 hours each day and also noting that Mrs. Adcox was an appropriate person to provide this care. *Page 5 
10. Upon receipt of the executed forms from plaintiff's counsel, defendants authorized 24 hour per day professional attendant care to be provided by Kelly Services within a reasonable time.
11. During a typical day with plaintiff, Mrs. Adcox awakens and makes breakfast for herself and her husband. She makes sure that his clothes are on straight as he sometimes cannot button his shirt and takes him to the garden with her or helps him walk to his chair to sit and watch television. Plaintiff sits in his chair and watches approximately four to six hours of television per day. During the time when plaintiff is watching television, Mrs. Adcox is free to do household chores, such as washing dishes and laundry, in other parts of the house. Plaintiff typically sleeps between eight and ten hours per night. While he sometimes awakens in the middle of the night if he has to go to the bathroom, he otherwise sleeps through the night. Plaintiff occasionally wears diapers for his incontinence.
12. Ms. Donna Adams is a nurse and supervisor for Kelly Services. As required by Kelly Services, Mrs. Adams performs a personal visit with plaintiff every ninety days and regularly monitors the reports regarding his needs from the aides caring for him.
13. Ms. Adams testified that defendants pay Kelly Services a total of $16.63 per hour for their services; however, much of this amount is used to pay the overhead expenses associated with the business. Of the $16.63 paid to Kelly Services, the aides who work for plaintiff are paid approximately $10.00 per hour. In addition to shift workers, Kelly Services also offers "live-in care," where an aide may stay in a patient's home for 24 hours per day to provide attendant care. The "live-in" aides are not paid $10.00 per hour, but are instead paid $188.00 per day.
14. Kelly Services aides Sonia McGee and her mother, Sandra Gray, also testified at the hearing before the Deputy Commissioner. Ms. Gray and Ms. McGee provide attendant care *Page 6 
services to plaintiff. Most of their job is to "stand by" plaintiff and make sure he does not fall while he is walking.
15. Industrial Commission nurse Karen Smith opined that Ms. Adcox was an appropriate caregiver, that 24-hour per day attendant care was reasonable and necessary, and that 12 to 24 hours of respite care every 5 to 7 days was reasonable.
16. Marion Morrow, a Registered Nurse, also provided testimony. Ms. Morrow opined that it did not appear that there was any change in plaintiff's condition in February 2007 to warrant a change to 24-hour attendant care. According to Ms. Morrow, in the Raleigh area, the starting wage for home health care attendants was an average of $6.50 per hour and the highest wage paid was $11.00 per hour. She testified that home healthcare agencies also provide 24-hour "live in" care, at a rate of $100.00 to $125.00 per day. Based upon her research, it was her opinion that most of the agencies would probably be paying Mrs. Adcox no more than $100.00 per day if she were awarded 24-hour attendant care for her husband, and only that much if she obtained her CNA license.
17. Dr. Mark Lefebvre is plaintiff's treating psychologist. Dr. Lefebvre has been caring for plaintiff since 1989. Dr. Lefebvre opined Mrs. Adcox was an appropriate person to provide companion or attendant care to plaintiff because she picked up on the worsening of his depression quicker than others did. He further expressed his belief that while providing this care, Mrs. Adcox would be able to take care of things for herself and would not have to be sitting there constantly staring at plaintiff throughout the day. Dr. Lefebvre went on to note his opinion that plaintiff should not be left alone for extended periods of time and that someone should always be within earshot of him because of his issues with confusion, disorientation and poor judgment. He also opined that respite care would be appropriate but declined to specify an amount. *Page 7 
18. Dr. Evangeline Lausier, practices internal medicine and has been treating plaintiff approximately three to four times per year since 1993. From time to time while caring for plaintiff, the subject of attendant care provided by Kelly Services has come up but neither plaintiff nor Mrs. Adcox had any dissatisfaction about the care provided by Kelly Services. Dr. Lausier correlates Mrs. Adcox's request to become the attendant care provider with her impending retirement and the inevitability of having to take over more care since the attendant care previously provided was during her work hours. Dr. Lausier believes that plaintiff requires 24-hour supervision and attendance and feels that Mrs. Adcox is the most appropriate provider of attendant care because of the quality of her relationship with plaintiff, the calming effect she has on plaintiff, and how quickly she picked up on changes in plaintiff's condition. Dr. Lausier opined that 1 week of respite care every 2 to 3 months would be appropriate.
19. Dr. Thomas Gualtieri also gave expert witness testimony in this matter as plaintiff's treating neuropsychiatrist since January 2006. Dr. Gualtieri testified that while he was aware that plaintiff was receiving outside attendant care, he did not recall any complaints from plaintiff or Mrs. Adcox about that care. Dr. Gualtieri does not have an opinion with regard to whether or not Mrs. Adcox can provide better care than the attendants who have been caring for plaintiff. However, he was clear in his opinion that responsibility for attendant care could be transferred to Mrs. Adcox because it was less intrusive. Dr. Gualtieri does not believe Plaintiff requires 24-hour attendant care, but that plaintiff does require someone there at all times, which could be satisfied by notification devices, bracelets, and other equipment.
20. Stephen Carpenter, a vocational rehabilitation counselor, testified that a rate of $15.00 to $25.00 per hour was appropriate for semiskilled care. However, Mr. Carpenter does not work in the home health care arena. Mr. Carpenter could not provide the name of any home *Page 8 
health care agency he surveyed in determining at what rate a semiskilled attendant care provider is paid. Further, Mr. Carpenter admitted that Mrs. Adcox is unskilled in the area of home health care and that unskilled, inexperienced health care providers earn as little as $8.00 per hour.
21. Considering factors such as her familiarity and experience with plaintiff, the need to assure continuity of service and the disruption to a household of having outside individuals present 24 hours per day, as well as the recommendations from plaintiff's doctors, Mrs. Adcox is the most appropriate person to provide attendant care to plaintiff. Respite time for Mrs. Adcox from her attendant care responsibility is reasonable and necessary from time to time as recommended by Dr. Lefebvre, Dr. Lausier, and Nurse Smith.
22. As of April 2007, plaintiff's physicians have recommended plaintiff receive attendant care 24 hours a day, 7 days a week. Plaintiff is able to bathe, dress, and feed himself. Plaintiff sleeps through the night on most days and much of the attendant care needed is to watch over plaintiff, assist him with meal preparation, and assist him with walking. Therefore, the Commission finds that plaintiff requires attendant care an average of 16 hours per day. Mrs. Adcox is the most appropriate person to provide said care. Further it is appropriate and reasonable that respite care be provided as needed.
23. Taking into account the rate charged by professional home health care agencies and the fact that Mrs. Adcox is not a professional and is an unskilled care provider without any business overhead, a fair rate of pay for Mrs. Adcox's attendant care services is $10.00 an hour.
24. Defendants provided attendant care services to plaintiff as prescribed and recommended by plaintiff's physicians. Plaintiff contends that he was in need of 24 hour care, which Mrs. Adcox provided, since 2003. Plaintiff has not shown through competent evidence *Page 9 
that plaintiff was in need of 24 hour care prior to April 2007. Therefore, Mrs. Adcox is not entitled to reimbursement for any attendant care provided prior to April 2007.
25 During the pendency of this matter, defendants have continued to provide 24 hour care to plaintiff except when Mrs. Adcox had refused the aides to provide said care. Thus, Mrs. Adcox is not entitled to reimbursement of any care she may have provided that overlapped with the care provided by defendants.
26. Neither party engaged in stubborn, unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On February 28, 1983, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
3. In the case at bar, plaintiff is able to perform some functions on his own, such as dressing, bathing, and feeding himself, but requires attendant or supervisory care an average of 16 hours per day. Such care was and continues to be necessary to provide relief to plaintiff. Defendants shall provide plaintiff 16 hours of attendant care per day, 7 days per week starting as of the date of the filing of this Opinion and Award. Said care shall be provided by Mrs. Adcox *Page 10 
with appropriate respite care being provided and paid for by defendants when needed. Defendants are authorized to make periodic assessments of plaintiff's condition. N.C. Gen. Stat. § 97-25.
4. The undersigned approve a rate of $10.00 per hour for Mrs. Adcox's attendant care services. During the period of times when the attendant care is provided by someone other than Mrs. Adcox, defendants shall pay for the services at the going market rate for professional home health care. N.C. Gen. Stat. § 97-2(19).
5. Plaintiff has failed to show that plaintiff was in need of 24-hour attendant care prior to the time when the physicians recommended it in April 2007. Within a reasonable amount of time after plaintiff's physicians recommended 24-hour care, defendants provided said care. Therefore, plaintiff's request for retroactive compensation for attendant care provided since 2003 is denied. N.C. Gen. Stat. § 97-25.
6. Neither plaintiff nor defendants have engaged in stubborn and unfounded litigiousness. Thus, there will be no award of attorney's fees to plaintiff or defendants under N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Mrs. Adcox for attendant care services provided as of the filing of this Opinion and Award at a rate of $10.00 per hour, 7 days per week, 16 hours per day. An amount of respite care is approved consistent with the recommendation of one of plaintiff's *Page 11 
current treating physician. Defendants are authorized to make periodic assessments of plaintiff's condition.
2. Defendants shall bear the costs.
This the 20th day of November, 2008.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DANNY LEE McDONALD COMMISSIONER